UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HONEYWELL INTERNATIONAL
INC., et al.,

              Plaintiffs,

      v.

PAUL MALTSEFF,

              Defendant.

CASE NO. C14-0283JLR

ORDER ON MOTION TO
DISMISS

## I.    INTRODUCTION

This matter comes before the court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  (Mot. (Dkt. # 40).)  Having considered the submissions of the parties, the balance of the record, the relevant law, and having heard oral argument, the court DENIES Defendant's motion. The court, however, court declines to exercises supplemental jurisdiction over Plaintiffs' state law claims, and therefore DISMISSES these claims without prejudice.  The court

ORDER- 1

1  also STRIKES the pending discovery motions and motion for a preliminary injunction

2  without prejudice to re-filing.

3  ## II.   BACKGROUND

4  Plaintiffs Intermec, Inc. and Intermec Technologies Corporation (collectively

5  "Intermec") are leading providers of barcode-reading technologies.  (Am. Compl. (Dkt.

6  # 14) ¶¶ 15-16.)  Intermec employed Defendant Dr. Paul Maltseff in various positions,

7  including software engineer, technologist, and intellectual property counsel, from 1994

8  through 2013.  (*Id.* ¶¶ 24-26.)  In these roles, Dr. Maltseff's duties included prosecuting

9  patent applications, directing Intermec's overall strategic intellectual property plan, and

10  inventing barcode-reading and radio frequency identification ("RFID") applications.

11  (*Id.*)  Plaintiffs allege that, as a result, Dr. Maltseff now possesses a substantial volume of

12  trade secret and confidential information regarding Intermec's technology development,

13  patent portfolio, intellectual property strategy, and patent protection strategy.  (*Id.* ¶¶ 2,

14  28.)

15  Intermec was purchased by Plaintiff Honeywell International Inc. ("Honeywell")

16  in September 2013.  (*Id.* ¶ 27.)  Shortly thereafter, Dr. Maltseff left Honeywell and

17  accepted the position of Chief U.S. Intellectual Property Counsel at Datalogic, a primary

18  competitor to Honeywell in the barcode-reading technology sector.  (*Id.* ¶¶ 5, 49.)  Dr.

19  Maltseff has already appeared on a Datalogic customer number before the United States

20  Patent and Trademark Office ("USPTO").  (*Id.* ¶ 12.)  Fearing that Dr. Maltseff, in his

21  new employment, will disclose confidential information regarding Intermec's technology,

22  Honeywell filed this suit.  (*Id.* ¶ 26.)

1      Honeywell's first complaint, which proceeded under diversity jurisdiction, alleged

2    two claims under Washington state law:  (1) misappropriation of trade secrets and (2)

3    breach of contract.  (*See generally* Compl. (Dkt. # 1).)  When Honeywell amended its

4    complaint to add Intermec, a non-diverse party, Honeywell also added a third claim:  (3)

5    a request for a declaratory judgment that Dr. Maltseff's conduct violates certain USPTO

6    regulations.  (Am. Compl. ¶¶ 69-75.)

7      For this third claim, Plaintiffs rely on the USPTO Rules of Professional Conduct,

8    which establish a duty of confidentiality for patent practitioners.  (*Id.* ¶ 80.)  Under the

9    Rules, "[a] practitioner who has formerly represented a client in a matter shall not

10   thereafter represent another person in the same or a substantially related matter in which

11   that person's interests are materially adverse to the interests of the former client . . . ."  37

12   C.F.R. § 11.109(a); (*see also* Am. Compl. ¶ 80.  Similarly, a practitioner who has

13   formerly represented a client in a matter "shall not thereafter use information relating to

14   the representation to the disadvantage of the former client . . . ."  37 C.F.R. § 11.109(c).

15     Patent Rule 56, however, also establishes a duty of disclosure, providing:

16     Each individual associated with the filing and prosecution of a patent
       application has a . . . duty to disclose to the Office all information known to
17     that individual to be material to patentability as defined in this section.

18   37 C.F.R. § 1.56; (*see also* Am. Compl. ¶¶ 70-74.  Plaintiffs contend that because

19   Patent Rule 56 requires disclosure of *all* information material to patentability, Dr.

20   Maltseff must be walled off from Datalogic patent applications for which he

21   possesses material confidential Honeywell information in order to avoid violating

22   his duty of confidentiality to Plaintiffs.  (Am. Compl. ¶¶ 81-83.)

1    Shortly after filing their amended complaint, Plaintiffs filed a motion for a

2  preliminary injunction (Dkt. # 17) and a motion for expedited discovery (Dkt. # 25).  Dr.

3  Maltseff responded with two motions for expedited discovery (Dkt. ## 37, 41) and

4  indicated that he intended to file a motion to dismiss for lack of subject matter

5  jurisdiction.  In light of the time-sensitive nature of Plaintiffs' claims, the court set an

6  abbreviated schedule for briefing on the motion to dismiss.  (Min. Order (Dkt. # 38).)

7  This motion is now before the court.

8                              **III.    ANALYSIS**

9  **A.    Legal Standard**

10    A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of

11  Civil Procedure 12(b)(1) can be either a facial or factual attack on the allegations.  *Safe*

12  *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the

13  moving party asserts that "the allegations contained in a complaint are insufficient on

14  their face to invoke federal jurisdiction."  *Id.*  In a factual attack, the moving party

15  "disputes the truth of the allegations that, by themselves, would otherwise invoke federal

16  jurisdiction."  *Id.*  In this case, Dr. Maltseff's challenge is facial because it asserts that

17  Plaintiffs' claims, on their face, do not come within the court's federal question

18  jurisdiction or constitute an impermissible request for an advisory opinion.  (*See* Mot. at

19  9-11.)  Because this is a facial attack, "all factual allegations in [Plaintiffs'] complaint are

20  taken as true and all reasonable inferences are drawn in [their] favor."  *See Pride v.*

21  *Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

22

1  **B.    Federal Question Jurisdiction**

2         Under federal question jurisdiction, district courts are authorized to exercise

3  original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of

4  the United States."  28 U.S.C. § 1331.  A civil action can "arise under" federal law in two

5  ways.  *Gunn v. Minton*, --U.S.--, 133 S. Ct. 1059, 1064 (2013).  Most directly, "a case

6  arises under federal law when federal law creates the cause of action asserted."  *Id.*  If,

7  however, a claim finds its origins in state rather than federal law, federal jurisdiction will

8  lie only "if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial,

9  and (4) capable of resolution in federal court without disrupting the federal-state balance

10 approved by Congress."  *Id.*; *see also Grable & Sons Metal Products, Inc. v. Darue*

11 *Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  With respect to declaratory judgment claims,

12 "it is settled law that "[t]he operation of the Declaratory Judgment Act is procedural only

13 and does not confer arising under jurisdiction."  *California Shock Trauma Air Rescue v.*

14 *State Comp. Ins. Fund*, 636 F.3d 538, 543 (9th Cir. 2011) (citing *Skelly Oil Co. v. Phillips*

15 *Petroleum Co.*, 339 U.S. 667, 671 (1950)).  As such, courts look to the subject matter of

16 the underlying dispute to determine jurisdiction over declaratory judgment claims.

17 *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014).

18        Here, as Plaintiffs' counsel conceded at oral argument, Plaintiffs rely solely on

19 their declaratory judgment claim as a basis for federal question jurisdiction.  (*See* Resp.

20 (Dkt. # 43) (discussing only declaratory judgment claim).)  With this claim, Plaintiffs

21 seek a declaration of their rights under certain PTO regulations.  (*See* Am. Compl. ¶¶ 70-

22 85.)  "It is beyond dispute that validly issued administrative regulations . . . may be

1  treated as 'laws of the United States' under § 1331(a)." *United States v. Alisal Water*

2  *Corp.*, 431 F.3d 643, 650 (9th Cir. 2005) (quoting *Chasse v. Chasen,* 595 F.2d 59, 61 (1st

3  Cir. 1979)).  Indeed, the Federal Circuit has made clear that "[t]he standards for practice

4  before the PTO are governed by federal law."  *Carter v. ALK Holdings, Inc.*, 605 F.3d

5  1319, 1324-25 (Fed. Cir. 2010) (discussing alleged violations of USPTO regulations); *see*

6  *also Byrne v. Wood, Herron & Evans, LLP*, 676 F.3d 1024, 1026 (Fed. Cir. 2012) (same).

7  The USPTO is granted explicit statutory power to establish regulations governing the

8  conduct of proceedings before it.  35 U.S.C. § 2.  Dr. Maltseff does not dispute that the

9  USPTO Rules of Professional Conduct and Patent Rule 56 are validly issued pursuant to

10  that power.  In short, this claim is predicated entirely on federal regulations promulgated

11  by a federal agency pursuant to a federal statute.  As such, federal law creates Plaintiffs'

12  claim, and Plaintiffs' claim "arises under" the laws of the United States for the purposes

13  of federal question jurisdiction.[1]  *Gunn*, 133 S. Ct. at 1064.

14  _____

15      [1] Dr. Maltseff's argument under *Grable* that Plaintiffs' declaratory judgment claim does not
contain a "necessarily raised" and "substantial" federal issue because the claim mirrors Plaintiffs' trade

16  secret claim is unavailing.  (*See* Mot. at 8-9; Reply (Dkt. # 46) at 6-7.)  First, Dr. Maltseff uses the wrong
test:  the *Grable* factors apply to state law claims and are therefore inapposite.  *See Gunn*, 133 S. Ct. at
1065.  Second, Dr. Maltseff misapplies the test:  the proper inquiry is whether a federal issue is

17  "necessarily raised" within the context of a state law claim, not whether a putative federal claim is
"necessarily raised" within the context of the overall suit.  *See Christianson v. Colt Indus. Operating*

18  *Corp.*, 486 U.S. 800, 809 (1988).  Third, even if the *Grable* factors did apply, the federal issue satisfies
both factors.  The interpretation of PTO regulations is "necessarily raised" because it is the only theory on
which Plaintiffs' declaratory judgment claim rests.  *See id.*  The interpretation of the PTO regulations is

19  "substantial" because it is forward-looking, will change the "real-world result" of the parties' federal
dispute, and will have precedential impact concerning the duties of patent practitioners before the USPTO

20  in general.  *See Gunn*, 133 S. Ct. at 1066-67 (finding that a backward-looking, hypothetical question of
patent law was not a "substantial" federal issue).  As such, this federal issue is, as required by *Gunn*,

21  "significant to the federal system as a whole."  *Id.* at 1068; *see, e.g. Molins PLC v. Textron, Inc.*, 48 F.3d
1172, 1192 (Fed. Cir. 1995) (Newman, J., concurring) (disagreeing with the majority that practitioner's

22  duty of candor to the USPTO trumped his duty of confidentiality to a former client).

1    **C.    Advisory Opinion**

2        The Declaratory Judgment Act provides that:  "In a case of actual controversy

3    within its jurisdiction . . . any court in the United States . . . may declare the rights and

4    other legal relations of any interested party seeking such declaration, whether or not

5    further relief is or could be sought."  28 U.S.C. § 2201(a).  The phrase "a case of actual

6    controversy" refers to the types of "cases" and "controversies" that are justiciable under

7    Article III of the Constitution.  *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127

8    (2007).  To present a "case or controversy," the dispute must be "real and substantial"

9    and "definite and concrete, touching the legal relations of parties having adverse legal

10   interests[.]"  *Id.*  "Absent a true case or controversy, a complaint solely for declaratory

11   relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)."

12   *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).  The test for

13   determining subject matter jurisdiction in declaratory judgment actions is "whether the

14   facts alleged, under all the circumstances, show that there is a substantial controversy,

15   between parties having adverse legal interests, of sufficient immediacy and reality to

16   warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127.

17       Dr. Maltseff argues that Plaintiffs' declaratory judgment claim asks for an

18   unconstitutional advisory opinion because it turns on a "hypothetical state of facts."

19   (Mot. at 8-11.)  Specifically, Dr. Maltseff contents that Plaintiffs have not adequately

20   alleged that he is prosecuting a Datalogic patent application directed to the same subject

21   matter as Plaintiffs' trade secrets.  (*Id.* at 11.)  This court disagrees.

22

ORDER- 7

1    Taking the allegations in Plaintiffs' complaint as true, the complaint admits of a
2    controversy of sufficient immediacy and reality to warrant the issuance of a declaratory
3    judgment.  In their complaint, Plaintiffs allege that (1) Dr. Maltseff, due to his long-term
4    employment at Intermec, possesses a wide range of confidential information regarding
5    Intermec technology (Am. Compl. ¶¶ 24-28), (2) Dr. Maltseff has recently accepted
6    substantially identical employment with Datalogic, in which he is responsible for
7    developing Datalogic's intellectual property portfolio (*id.* ¶¶ 6, 44, 47), (3) Datalogic
8    directly competes with Intermec in the same technological field (*id.* ¶¶ 15, 49), (4) Dr.
9    Maltseff has entered an appearance before the USPTO on behalf of Datalogic (*id.*, ¶¶ 12,
10   78), and (5) some of the confidential Intermec information Dr. Maltseff possesses is
11   material to the patentability of pending Datalogic patent applications (*id.*  ¶¶ 75-76).  In
12   light of these allegations, it is reasonable to infer that Dr. Maltseff is or will be involved
13   with Datalogic patent applications which implicate confidential Intermec information,
14   and therefore trigger a conflict between Dr. Maltseff's duty of disclosure under Patent
15   Rule 56 and his duty of confidentiality to Plaintiffs.  *See Love*, 915 F.2d at 1245 (9th Cir.
16   1990).  With respect to those applications, the scope of Dr. Maltseff's duties to Plaintiffs
17   and the extent to which he can continue to represent Datalogic before the USPTO in light
18   of those duties are "real and substantial" and "definite and concrete" controversies that
19   "touch[] the legal relations of parties having adverse legal interests."  *MedImmune*, 549
20   U.S. at 127.  Accordingly, at least at this stage in the litigation, the court is not convinced
21   that Plaintiffs' declaratory judgment claim requires an advisory opinion.  *But see Leeson*
22   *v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 (9th Cir. 2012) ("Subject

1    matter jurisdiction can never be forfeited or waived and federal courts have a continuing

2    independent obligation to determine whether subject-matter jurisdiction exists.")

3    **D.    Supplemental Jurisdiction**

4         Having determined that the court has subject matter jurisdiction over Plaintiffs'

5    declaratory judgment claim, the court now considered Plaintiffs' state law trade secret

6    and breach of contract claims.  If a federal district court has original jurisdiction over one

7    claim in an action, it also has "supplemental jurisdiction over all other claims that are so

8    related . . . that they form part of the same case or controversy . . . ."  28 U.S.C.

9    § 1367(a).  Claims form part of the same case or controversy when they arise from "a

10   common nucleus of operative facts" such that a plaintiff "would ordinarily be expected to

11   try them all in a single judicial proceeding."  *Executive Software N. Am., Inc. v. U.S. Dist.*

12   *Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1551 (9th Cir. 1994) (quoting *United Mine*

13   *Workers v. Gibbs,* 383 U.S. 715, 86 (1966)).

14        A court, however, may decline to exercise supplemental jurisdiction over a claim

15   if:

16        (1) the claim raises a novel or complex issue of State law,
          (2) the claim substantially predominates over the claim or claims over
17           which the district court has original jurisdiction,
          (3) the district court has dismissed all claims over which it has original
18           jurisdiction, or
          (4) in exceptional circumstances, there are other compelling reasons for
19           declining jurisdiction.

20   28 U.S.C.  § 1367(c).  The discretion to decline supplemental jurisdiction is "triggered by

21   the court's identification of a factual predicate that corresponds to one of the section

22   1367(c) categories."  *Executive Software*, 24 F.3d at 1557.  "Once that factual predicate is

1  identified, the exercise of discretion . . . still is informed by whether [dismissing the] state

2  claims comports with the underlying objective of most sensibly accommodating the

3  values of economy, convenience, fairness and comity." *Id.* (internal quotation marks and

4  citations omitted).  If the exercise of supplemental jurisdiction does not advance these

5  considerations, "a federal court should hesitate to exercise jurisdiction over state law

6  claims." *Id.*

7      Here, although Plaintiffs' trade secret and breach of contract claim form part of the

8  same case or controversy as their declaratory judgment claim, the court declines to

9  exercise supplemental jurisdiction over these claims.  To begin, the court finds that the

10  state law claims substantially predominate over the declaratory judgment claim.  The

11  Supreme Court has identified that state issues can predominate "in terms of proof, of the

12  scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs,*

13  383 U.S. at 726.  Here, the declaratory judgment claim is directed to a narrow issue:  Dr.

14  Maltseff's involvement with certain Datalogic patent applications at the USPTO.  On the

15  other hand, the trade secrets claim and breach of contract claim have a much broader

16  scope:  they concern Dr. Maltseff's business activities at Datalogic as a whole.  These

17  state law claims also require proof of additional elements, including, for example,

18  determination of what Intermec information constitutes a trade secret and interpretation

19  of Dr. Maltseff's Employment Agreement with Intermec.  (*See* Compl. ¶¶ 52-68.)

20  Additionally, the relief available for Plaintiffs' state law claims, including monetary

21  damages and injunctive relief, is more comprehensive than the simple declaration of

22  rights that the federal declaratory judgment claim affords.  (*See id.* at 18-20 (Prayer for

1    Relief).)  Tellingly, Plaintiffs' motion for a preliminary injunction omits discussing the

2    merits of the declaratory judgment claim and instead focuses on the trade secret and

3    breach of conflict claims.  (*See* PI Mot. (Dkt. # 25).)  Based on those facts, the court finds

4    that state issues predominate.  *See, e.g.*, *Feezor v. Tesstab Operations Grp., Inc.*, 524 F.

5    Supp. 2d 1222, 1224 (S.D. Cal. 2007) (finding that state law issues predominate because

6    plaintiff was entitled to damages under state law but only injunctive relief for the federal

7    claim).

8            Because a factual predicate of section 1367(c) has been identified, the inquiry

9    turns to whether dismissing the state claims comports with the values of economy,

10   convenience, fairness and comity.  *Executive Software*, 24 F.3d at 1557.  With respect to

11   judicial economy, courts consider the time and activity that the parties have invested in

12   the state law claims to date.  *See Schneider v. TRW, Inc.*, 938 F.2d 986, 994 (9th Cir.

13   1991) (collecting cases affirming dismissal of state claims early in the action).  The

14   activity on the state law claims in this case is negligible:  the case is less than two months

15   old, there has been no discovery, and no substantive motions have been decided or even

16   fully briefed.  (*See generally* Dkt.)  In fact, declining jurisdiction may increase judicial

17   economy:  at oral argument Plaintiffs' counsel represented that a quick decision on the

18   declaratory judgment claim would go a long way towards resolving the parties'

19   overarching dispute.  Accordingly, this factor weighs in favor of declining jurisdiction.

20           The convenience and fairness factors are neutral.  If Plaintiffs re-file their state law

21   claims in state court, Dr. Maltseff may be subjected to suit in two forums.  However, as

22   Plaintiffs' counsel showed at oral argument, the factual and legal overlap between the

declaratory judgment and state law claims is likely minimal.  Therefore, the risk of truly

duplicitous proceedings is lessened.  Additionally, neither party appears to have engaged

in manipulative proceedings regarding forum selection.  *See Wright v. N. Am. Terrazzo*,

C12-2065JLR, 2013 WL 3978235, at *5 (W.D. Wash. Aug. 2, 2013) (considering forum

shopping as relevant to the fairness factor).  Finally, "fairness to the litigants counsels

dismissal because a surer-footed reading of state law would be available in state court."

*Schneider v. TRW, Inc.*, 938 F.2d 986, 996 (9th Cir. 1991).  Although this court

frequently interprets Washington law when necessary, it is nevertheless true that "state

law . . .  is better left to the state judiciary."  *Nat'l Audubon Soc. v. Dep't of Water,* 858

F.2d 1409, 1418 (9th Cir. 1988), *superseded on other grounds by* 869 F.2d 1196 (9th Cir.

1988).

    As the Supreme Court held in *Gibbs*:  "Needless decisions of state law should be

avoided both as a matter of comity and to promote justice between the parties, by

procuring for them a surer-footed reading of applicable law."  383 U.S. at 726.

Therefore, the final factor of comity also weighs in favor of declining jurisdiction.

Plaintiffs concede that the state law claims are largely separate and distinct from

declaratory judgment claim.  Further, this court has already found that the state law issues

predominate.  It is preferable that state law courts tackle these issues.  *See Feezor*, 524 F.

Supp. 2d at 1224 (finding that the complexity of state law issues weighed in favor of

dismissing state law claims in the interests of comity).

    For these reasons, the court concludes that the interests of judicial economy,

convenience, fairness, and comity are best served by declining to exercise supplemental

ORDER- 12

1   jurisdiction over Plaintiffs' state law claims.  Accordingly, Plaintiffs' trade secret and

2   breach of contract claims are dismissed without prejudice.

3   **E.    Outstanding Motions**

4           This ruling considerably narrows the scope of the issues in play in this lawsuit.  At

5   the time of this ruling, the following motions are still outstanding:  Plaintiffs' motion for

6   a preliminary injunction (Dkt. # 17), Plaintiffs' motion to expedite discovery (Dkt. # 25),

7   Dr. Maltseff's cross-motion for disclosure (Dkt. # 37), and Dr. Maltseff's motion to

8   expedite discovery (Dkt. # 41).  In light of the dismissal of the state law claims,

9   substantial parts of these motions may now be moot or irrelevant, and the parties may

10  want to adjust their positions or raise different arguments.  In the interests of beginning

11  with a clean slate, the court strikes these motions without prejudice to re-filing.

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

ORDER- 13

1

### IV.   CONCLUSION

2          For the foregoing reasons, the court DENIES Defendant's motion to dismiss.

3  (Dkt. # 40).  The court DISMISSES Plaintiffs' trade secret claim and breach of contract

4  claim without prejudice.  The court STRIKES Plaintiffs' motion for a preliminary

5  injunction (Dkt. # 17), Plaintiffs' motion to expedite discovery (Dkt. # 25), Defendant's

6  cross-motion for disclosure (Dkt. # 37), and Defendant's motion to expedite discovery

7  (Dkt. # 41) without prejudice to re-filing.

8          Dated this 10th day of April, 2014.

9

10

11                                        _____

12                                        JAMES L. ROBART
                                          United States District Judge

13

14

15

16

17

18

19

20

21

22